**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW YORK IMMIGRATION COALITION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT AND UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR INJUNCTIVE RELIEF**

**NATURE OF ACTION**

1. This is an action under the Freedom of Information Act seeking improperly withheld records vital to maintaining the transparency of the United States' immigration policies and practices and the accountability of the federal government in adopting and implementing those policies. In November 2017, pursuant to the Freedom of Information Act ("FOIA"), New York Immigration Coalition ("NYIC" or "Plaintiff") requested several categories of documents from Defendants U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP" and together with ICE, "Defendants"). But in violation of FOIA, Defendants failed to produce the requested records within twenty business days. Therefore, pursuant to FOIA, 5 U.S.C. § 552, Plaintiff NYIC seeks an injunction to compel ICE and CBP to promptly produce the requested records.

## PARTIES

2. Plaintiff NYIC is a policy and advocacy organization that represents and serves nearly 200 groups in New York working with immigrants and refugees. NYIC researches, generates, and supports advocacy around issues related to immigration. It also works with national immigration advocacy groups to develop policy guidance and oversight in the ever-changing context of immigration law. NYIC's targeted research and advocacy enables legal service providers, community members, and policymakers to address the needs and gaps in services to immigrants living in New York State.

3. Defendant ICE is an agency within the Department of Homeland Security in the executive branch of the United States government and consists of three operational directorates: Homeland Security Investigations ("HSI"), Enforcement and Removal Operations ("ERO"), and Office of the Principal Legal Advisor. ICE is an agency within the meaning of 5 U.S.C. § 552(f)(1).

4. Defendant CBP is an agency within the Department of Homeland Security in the executive branch of the United States government. CBP is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the parties and action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

7. Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B) because Plaintiff NYIC resides in and has its principal place of business in the forum and at least some, if not all, of the records NYIC seeks are believed to be located in the Southern District of New York.

## STATUTORY FRAMEWORK

8. FOIA promotes open government by providing every person with a right to request and receive federal agency records.  5 U.S.C. § 552(a)(3)(A).  FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies."  *Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir. 1999).

9. In furtherance of its purpose to encourage open government, FOIA imposes strict deadlines on federal government agencies to provide responsive documents to FOIA requests.  5 U.S.C. § 552(a)(6)(A).

10. An agency must comply with a FOIA request by issuing a determination within twenty business days after receipt of the request.  *Id.* § 552(a)(6)(A)(i).

11. An agency may be entitled to one ten-day extension of time to respond to a request if it provides written notice to the requester explaining that "unusual circumstances" exist that warrant additional time.  5 U.S.C. § 552(a)(6)(B).

12. An agency must immediately notify the requester of its determination whether to comply with a request, and the reasons for it, and of the right of such person to appeal an adverse determination.  *Id.* § 552(a)(6)(A)(i).

13. An agency must make a determination on appeal within twenty business days after receipt of the appeal.  *Id.* § 552(a)(6)(A)(ii).

14. A FOIA requester who exhausts administrative remedies may petition the court for injunctive and declaratory relief from the agency's continued withholding of public records. *Id.* § 552(a)(4)(B).

## DEFENDANTS' INVOLVEMENT WITH OPERATION MATADOR

15. Launched in May 2017, Operation Matador is a joint federal-state task force designed to combat the proliferation of transnational gangs in the United States, with a particular focus on the gang known as MS-13.

16. Defendants ICE and CBP have both been heavily involved in the planning and execution of Operation Matador. On June 14, 2017, ICE issued a press release stating that "U.S. Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) New York, along with ICE Enforcement and Removal Operations (ERO), announced their recent launch of Operation Matador." *Operation Matador nets 39 MS-13 arrests in last 30 days*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (June 14, 2017), https://www.ice.gov/new/releases/operation-matador-nets-39-ms-13-arrests-last-30-days. (Ex. C.) According to this press release, Operation Matador is a joint operation between several federal and state agencies, including multiple ICE components (HSI and ERO) and CBP. In its first ten months, 475 individuals were arrested as part of this wide-ranging operation. *Joint Operation nets 24 transnational gang members, 475 total arrests under Operation Matador*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (March 29, 2018), https://www.ice.gov/news/releases/joint-operation-nets-24-transnational-gang-members-475-total-arrests-under-operation. (Ex. D.)

17. Given their significant involvement in Operation Matador, and upon information and belief, ICE and CBP possess voluminous records relating to the operation. These records include documents about Operation Matador's conception and approval, an authorization

4

memorandum, the operation's planning documents, guidelines for carrying out the operation, and Operation Matador's funding and budget.

18. While Operation Matador's existence and goals have been widely reported, little is known about it. Federal and state authorities have declined to disclose even basic information that is made public in most law enforcement operations. *See* Tom Hays and Colleen Long, *The New York crackdown on MS-13 that Trump touted in his State of the Union speech remains shrouded in secrecy*, BUSINESS INSIDER (Feb. 21, 2018), https://www.businessinsider.com/ap-much-touted-ms-13-sweep-keeps-even-most-basic-details-secret-2018-2. (Ex. E.)

19. Operation Matador is of special and current public interest, particularly in New York, where it is centered. Upon information and belief, millions of dollars of taxpayer money have been expended on Operation Matador and hundreds of New York residents have been arrested as part of the operation.

20. Operation Matador disproportionately affects immigrant communities. Many individuals investigated as a part of Operation Matador were undocumented immigrants who have been taken from their families and indefinitely detained or even deported, despite a dearth of evidence tying them to gang activity. Over half of arrests associated with Operation Matador (248 of the 475 total arrests) have been administrative arrests by immigration agencies, rather than criminal arrests. *See* Ex. D. Other immigration rights groups have accused the government of using unsubstantiated rumors of gang affiliations to detain innocent people. *See* Ex. E.

### NYIC'S FOIA REQUESTS

21. NYIC is gravely concerned that two federal immigration agencies, ICE and CBP, and the immigration court system are so heavily involved in a law enforcement operation purportedly aimed at "gang members," not immigrants. NYIC therefore sought documents from

ICE and CBP that would shed light on Operation Matador and ensure that the rights of immigrants were not being violated.

22. In particular, on November 22, 2017, NYIC submitted a FOIA request to ICE, directed at both HSI and ERO (the "ICE Request," attached as Exhibit A).

23. On the same day, NYIC also submitted a similar FOIA request to CBP (the "CBP Request," attached as Exhibit B).

24. The ICE Request and the CBP Request (collectively the "FOIA Requests") seek from each agency:

> (1) All documents relating to [the agency's] agreements with other government agencies, state or federal, involving Operation Matador . . . ; (2) all documents reflecting communication and coordination between government agencies, state or federal, involving Operation Matador . . . ; (3) all training materials distributed to or communicated with any governmental agency, state or federal, that participated in Operation Matador . . . ; and (4) all documents, regulations, and guidelines defining or outlining the groups or profiles of individuals targeted by Operation Matador.

25. In addition, to determine the extent of CBP's involvement in Operation Matador specifically, the CBP Request asks for, "All documents and guidance relating to CBP resources committed or contributed to Operation Matador, including any personnel or equipment used in Operation Matador." *See* Ex. B.

26. Because ICE planned and launched the joint operation, the ICE Request also requests,

> (1) All documents related to the initial conception of Operation Matador, including the plan submitted for approval and any comments, objections, or reservations related to the plan; (2) the authorization memorandum approving Operation Matador; (3) all documents, regulations, and guidelines relating to the operation plans for carrying out Operation Matador; (4) all documents, regulations, and guidelines relating to operation approval plans for carrying out Operation Matador; (5) all documents, regulations, and guidelines relating to Operation Matador's funding and any funding requests; and (6) all documents and guidelines relating to Operation Matador's budget. *See* Ex. A.

27. As detailed further below, despite the government's expressed presumption in favor of disclosure with regard to FOIA requests, and NYIC's exhaustion of administrative remedies, CBP produced only ten pages of heavily redacted emails and ICE failed to produce a single document.

### DEFENDANT ICE'S INSUFFICIENT RESPONSE

28. On December 12, 2017, ICE acknowledged receipt of the ICE Request and invoked the 10-day statutory extension to respond. (Ex. F.)

29. On January 12, 2018, ICE issued its FOIA decision. (Ex. G.) It stated that ICE was withholding the requested records in their entirety pursuant to 5 U.S.C. § 552(b)(7)(A) ("FOIA Exemption 7(A)"). According to ICE's decision,

30. "ICE has determined that the information you are seeking relates to ongoing criminal law enforcement investigations. Therefore, ICE is withholding all records, documents, and/or other material, which if disclosed prior to completion, could reasonably be expected to interfere with law enforcement proceedings and final agency actions related to those proceedings. Please be advised that once all pending matters are resolved and FOIA Exemption 7(A) is no longer applicable, there may be other exemptions which could protect certain information from disclosure, such as FOIA Exemptions 6, 7(C), 7(D), 7(E), and/or 7(F)."

31. ICE's decision violated FOIA in at least three ways. First, ICE failed to detail why or how the requested information was related to an enforcement proceeding. Second, ICE withheld all requested documents, rather than provide access to, at a minimum, the portions of responsive records that would not interfere with enforcement proceedings. Third, ICE failed to include any information about the search it was obligated to conduct in response to NYIC's request, including whether such a search actually occurred.

32. NYIC timely appealed ICE's decision by letter dated February 27, 2018, explaining the deficiencies in ICE's response. (Ex. H.) ICE received NYIC's appeal letter on March 9, 2018. (Ex. I.)

33. ICE issued its decision on appeal on April 6, 2018. (Ex. J.) ICE's letter response conclusorily stated that HSI and ERO searched for responsive records after receiving the ICE Request and that the search was "adequate in all respects and was reasonably calculated to uncover all relevant documents." *Id.* The letter also affirmed ICE's initial decision to withhold the records, stating that,

34. The ICE FOIA Office applied FOIA Exemption (b)(7)(A) because of the "open status of an ongoing criminal investigation and the nature of the documents, specifically, that they are records or information compiled for a law enforcement purpose, the disclosure of which could reasonably be expected to interfere with ongoing enforcement proceedings. ICE has confirmed that as of April 6, 2018, the investigation is still ongoing. . . . ICE reserves the right to assert FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F) when FOIA Exemption (b)(7)(A) no longer applies." *Id.*

35. ICE's improper refusal to disclose any substantive details about how Exemption (b)(7)(A) allegedly applies to the requested documents hampers NYIC's ability to meaningfully respond and itself is a violation of FOIA. But ICE's reading of the exemption is improper even on its face because Exemption (b)(7)(A) exempts "records or information compiled for law enforcement purposes, **but only to the extent that the production of such [records] could reasonably be expected to interfere with enforcement proceedings**." 5 U.S.C. § 552(b)(7)(A) (emphasis added). This exemption therefore could not possibly fully exempt every document, and every word within the documents, responsive to NYIC's twenty categories of requests. In fact,

none of NYIC's requests seek documents whose disclosure would interfere with enforcement proceedings. The requests ask only for broad, agency-level information, not details of specific investigations. For example, it is inconceivable that releasing records responsive to NYIC's request for "documents and guidelines relating to Operation Matador's budget" would interfere with agencies' ability to carry-out the operation itself.

36. ICE's withholding of records responsive to the ICE Request is improper and in violation of the FOIA.

## DEFENDANT CBP'S INSUFFICIENT RESPONSE

37. On December 8, 2017, CBP responded to the CBP Request via email, stating that "After a careful review of your FOIA request, we determined that the information you are seeking is not under the purview of CBP. Requests for information regarding Operation Matador, should be made to Immigration and Customs Enforcement (ICE)." (Ex. K.)

38. CBP's decision violated FOIA in two key ways. First, CBP failed to include any information about the search it was obligated to conduct in response to NYIC's request, including whether such a search actually occurred or whether responsive documents were located. Second, NYIC impermissibly denied NYIC's request for a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii). NYIC timely appealed CBP's decision by letter dated January 2, 2018, explaining these deficiencies. (Ex. L.)

39. On April 20, 2018, CBP responded with its decision on NYIC's appeal. Implicitly admitting that its previous search may not have fully responded to the CBP Request, CBP stated that it conducted a new search for records related to the planning and execution of Operation Matador. The letter stated, in response to NYIC's first category of requests for "all documents relating to Custom and Border Protection (CBP) agreements with other government agencies, state

or federal involving Operation Matador," that there were no information sharing agreements between CBP and ICE because the "One DHS Rule," DHS Policy Directive 262-05, "Information Sharing and Safeguarding" (Sept. 4, 2014), mandated that Department of Homeland Security (DHS) components automatically share information with each other.  But this response was deficient because the fact that CBP and ICE automatically share information does not mean that CBP does not have agreements with state agencies, or federal agencies outside DHS, that had a role in Operation Matador, an issue which CBP's response does not address.

40.     CBP's letter then outlined CBP's newest search for responsive records.  According to CBP's decision on appeal, CBP's FOIA Division contacted the CBP office geographically closest to the sites of the operation and requested "any CBP records they had about CBP's role in the planning and execution of Operation Matador."  The local CBP office responded with ten pages of emails which the CBP FOIA Division redacted pursuant to its invocation of FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E) before releasing them to NYIC.  (Ex. M.)

41.     The CBP's search for records "about CBP's role in the planning and execution of Operation Matador" was not sufficiently broad nor sufficiently detailed to ensure that the local CBP office found all documents responsive to all of the categories in the CBP Request.  For instance, the CBP Request asked for "all documents reflecting communication and coordination between government agencies, state or federal, on Operation Matador."  This request was not restricted to the planning and execution of the Operation but, rather, sought all related communications (*see also* Ex. B).  Additionally, the email was not reasonably calculated to locate all records responsive to the CBP Request.  For example, instead of searching all offices likely to possess responsive information, CBP's search was restricted to the single CBP office closest to the site of the operation.

42. As evidence of the insufficiency of CBP's search, despite CBP's active participation in Operation Matador over the last twelve months, it was purportedly able to find only 10 total pages of records.

43. CBP's heavy redactions to the documents before releasing them to NYIC also violate FOIA. None of NYIC's requests seek information regarding (1) "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6); (2) "records or information compiled for law enforcement purposes [that] could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C); or (3) "records or information compiled for law enforcement purposes [that] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," *id.* § 552(b)(7)(E).

44. CBP's redactions were therefore unwarranted. For example, CBP redacted innocuous information such as the "number and type of CBP employees" provided to the Operation under Exemption (b)(7)(E). The disclosure of this type of generic information on personnel would not "disclose techniques and procedures" or "reasonably be expected to risk circumvention of the law." *See id*.

45. CBP's withholding of responsive records is therefore improper and a violation of FOIA.

## CAUSE OF ACTION
(Violation of FOIA, 5 U.S.C. § 552)

46. NYIC re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 of this complaint.

47. Defendants' failure to make promptly available the records sought by NYIC's request violates FOIA, 5 U.S.C. § 552.

48. Defendants' failure to conduct a reasonable search for the records sought by NYIC's request violates FOIA, 5 U.S.C. § 552.

49. NYIC has exhausted all administrative remedies with respect to its FOIA requests.

50. There is a justiciable controversy between the parties as to the production of documents responsive to NYIC's FOIA requests.

51. Unless enjoined by this Court, ICE and CBP will not comply with their obligations under FOIA to release the requested information on Operation Matador.

52. NYIC and the public at large will be substantially damaged and harmed if the Court does not enjoin and order Defendants to produce the requested records.

## REQUESTED RELIEF

WHEREFORE, Plaintiff NYIC respectfully requests that this Court provide the following relief:

A. Find that Defendants violated FOIA by failing to promptly produce records responsive to NYIC's requests;

B. Declare that Defendants violated FOIA by failing to promptly produce records responsive to NYIC's requests;

C. Enjoin Defendants from withholding the records requested in NYIC's requests that have not yet been produced;

D. Order Defendants to immediately and expeditiously search for and disclose the records requested in NYIC's requests;

E. Order that this case be expedited in light of the government's non-cooperation with NYIC's requests;

F. Award NYIC costs and and reasonable attorneys' fees as provided by 5 U.S.C. § 552(a)(4)(E); and

G. Grant such other and further relief as this Court may deem just and proper.

DATED: May 16, 2018

Respectfully submitted,

/s/ Terence Y. Leong

Warren Haskel
Terence Y. Leong
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900
warren.haskel@kirkland.com
terence.leong@kirkland.com

*Attorneys for New York Immigration Coalition*