# EXHIBIT M



**U.S. Department of Homeland Security**
Washington, DC 20229

**U.S. Customs and Border Protection**

DIS-3 OT:RR:RDL:FAPL
CBP-AP-2018-022716 MMC

April 20, 2018

Ms. Camille J. Mackler
New York Immigration Coalition
131 W. 33rd Street, Suite 610
New York, New York 10001

RE:     Freedom of Information Act Appeal; Operation Matador; CBP-2018-012787

Dear Ms. Mackler:

This is in response to your January 11, 2018 appeal, received by CBP on January 16, 2018 indicating your intent to appeal the December 8, 2017 actions of the U.S. Customs and Border Protection (CBP) Freedom of Information Act (hereinafter "FOIA") Division, Privacy and Diversity Office.

 In your initial request you sought:

1.  All documents relating to Custom and Border Protection (CBP) agreements with other government agencies, state or federal involving Operation Matador, including, but not limited to ICE Homeland Security Investigations (HSI), ICE Enforcement and Removal Operations (ERO), U. S. Citizenship and Immigration Services (USCIS), the Suffolk County Police Department (SCPD), the Nassau County Police Department (NCPD) and the New York City Police Department (NYPD).

2.  All documents reflecting communication and coordination between government agencies, state or federal on Operation Matador including, but not limited to, ICE HSI & ERO, USCIS, SCPD, NCPD and NYPD.

3.  All training material distributed to or communicated with a governmental agency, state or federal that participated in Operation Matador, including but not limited to, ICE HSI & ERO, USCIS, SCPD, NCPD and NYPD.

4.  All documents, regulations, and guidelines defining or outlining the groups or profiles of individuals targeted by Operation Matador.

5.  All documents and guidance relating to CBP resources committed or contributed to Operation Matador, including any personnel or equipment used in Operation Matador.

In reply to your request, the CBP FOIA Division indicated that pursuant to your request if records existed they would be available at the public I-94website.  An I-94 is a CBP record.  Specifically it records an individual's Arrival/Departure to and from the United States[1].

It appears that the CBP FOIA Division deduced that because Operation Matador's mission concerned undocumented individuals who where were the focus of a criminal investigation, said individuals may, in fact, have been deported and therefore required an I-94 departure record.  As such, the CBP FOIA Division directed you to the I-94 website. After reading your initial and appellate requests it is our understanding that in fact you are seeking records about the planning and execution of the Operation itself.  Therefore, we have conducted a new appellate search, seeking any CBP records, if they exist, about the planning and execution of Operation Matador.

Concerning your first request, no information sharing agreements or the like exist between CBP and ICE because the adoption of "One DHS Rule" supplanted any need for them.  According to the One DHS Rule,[2] components (CBP, ICE, USCIS, etc.) within DHS share information as one Department, rather than as separate entities. As such, a written agreement outlining the terms of agreement for the sharing of information is unnecessary.

In an effort to obtain any records CBP may have about "Operation Matador", we contacted the CBP office that was geographically closest to the sight(s) of the operation. We specifically requested from them any CBP records they had about CBP's role in the planning and execution of Operation Matador.  In reply, that office provided us with ten (10) pages of e-mails.  For the reasons stated below we are releasing all ten (10) pages with redactions made pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E).

Invoking Exemption (b)(6) permits the government to withhold information about an individual in "personnel and medical and similar files" when the disclosure "would constitute a clearly unwarranted invasion of personal privacy."[3]  The information we are withholding in these records concern CBP Officers and third parties.  We are withholding

---

[1] See also the I-94 W: A non-immigrant Visa Waiver Arrival/Departure Record.
[2] DHS Policy Directive 262-05 **Information Sharing and Safeguarding**, dated September 4, 2014.
[3] 5 U.S.C. §552(b)(6)

personal information such as CBP officers' and third-parties' first and last names and direct telephone numbers.

Information subject to exemption pursuant to (b)(6), must fall within the category of "personnel, medical files and similar files."[4]   Once that threshold is met, Exemption (b)(6) requires a balancing test of the public's right to know the personal information against an individual's right to privacy to determine whether the information in question should be disclosed to the public.[5]

Concerning the first prong of the test, the "category of record" prong, personnel and medical files are easily identified, but what constitutes a "similar file" requires further analysis.  In *United States Department of State v. Washington Post Co.*,[6] the United States Supreme Court held that based upon a review of the legislative history of the FOIA, Congress intended the term "similar files" to be interpreted broadly, rather than narrowly.[7]   The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information."[8] Rather, the Court made clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection.

The records at issue are considered investigative records because they were created to engage in a law enforcement action(s) concerning undocumented persons and those persons' engagement in criminal acts or their membership in a group committing criminal acts.  As such, the first prong of the Exemption 6 test is met as the subject records are records that contain personal information and these types of records fall within the broad definition of "similar files".

As the "category of record" threshold has been met, we must examine whether disclosure of the identified information in the records at issue would constitute a clearly unwarranted invasion of personal privacy.  Making that decision requires a balancing of the privacy interest that would be compromised by disclosure, against any public interest in the requested information.

The burden of establishing that disclosure would serve the public interest is on the requester.[9]  You have not demonstrated any genuine and significant interest in CBP officers' and third parties first and last names or phone numbers.  Neither have you

---

[4]*U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989).

[5]*Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976).

[6]456 U.S. 595 (1982).

[7]Id. at 599-603 (citing H.R. Rep. No. 89-1497, at 11 (1966); S. Rep. No. 89-813, at 9 (1965); S. Rep. No. 88-1219, at 14 (1964)).

[8]Id. at 601 (citing H.R. Rep. No. 89-1497, at 11 (1966)); see *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) ("The Supreme Court has read Exemption 6 broadly, concluding the propriety of an agency's decision to withhold information does not 'turn upon the label of the file which contains the damaging information.'" (quoting *Wash. Post*, 456 U.S. at 601)).

[9]*Associated Press v. DOD*, 549 F.3d 62, 66 (2d Cir. 2008) ("The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA.")

articulated how the disclosure of this information will advance the primary goal of the FOIA (to shed light on the operation of the federal government).  As such, we are invoking the (b)(6) exemption for this type of information in the records we are releasing to you.

Exemption (b)(7)(C) was also employed to withhold CBP officers' and third parties names and phone numbers from disclosure.  Exemption (b)(7) is subdivided into six subparts, (A) through (F).  The initial requirement for the use of all the (b)(7) exemptions is that the records or information subject to disclosure consideration have been "compiled for law enforcement purposes."[10]   Additionally the (b)(7) exemptions apply to civil, criminal and administrative law enforcement proceedings.[11]  The subject records have been complied for law enforcement purposes as they concern a specific enforcement operation relevant to the law enforcement mission of CBP.

Specifically, Exemption (b)(7)(C) exempts from disclosure "records and information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[12]   This exemption protects, among other information, the identity of law enforcement personnel and third-parties referenced in files compiled for law enforcement purposes.  This exemption is designed to protect law enforcement personnel conducting their official duties from harassment and annoyance in their private lives that could conceivably result from public disclosure of their identity.[13] Exemption (b)(7)(C) is also intended to protect third-parties identities in law enforcement files. Specifically, it is meant to protect a third party from comment, speculation and stigmatizing connotation associated with being identified in a law enforcement record.

The application of Exemption (b)(7)(C), to specific information requires the user to perform a balancing test regarding an individual's privacy interest versus the public interest of, in this instance, third parties' and CBP officers' first and last names and phone numbers..[14]  The privacy interests of the third parties—being protected from comment, speculation and stigmatizing connotation associated with being identified in a law enforcement record--- far outweigh whatever public interest, if any, exists in the release of their personally identifiable information. The same can be said for the privacy interests of the CBP officers (being protected from public disclosure of the identity of a law enforcement officer who, because of the conduct of his/her official duties, could conceivably be subject to harassment and annoyance in his/her private life) far outweigh whatever public interest, if any, exists in having CBP officers' information released. As

---

[10] 5 U.S.C. 552 (b)(7).

[11] See generally *Center for National Policy Review v. Weinberger*, 502 F.2d 370 (D.C. Cir. 1974); *Detroit Free Press, Inc. v. Department of Justice*, 73 F.3d 93 (6th Cir. 1996); *Oritz v. Health and Human Services*, 70 F.3d 729 (2d Cir. 1995).

[12] 5 U.S.C. 552 (b)(7)(C).

[13] *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978).

[14] See *Castenada v. United States*, 757 F.2d 1010, 1012 (9th Cir. 1985).

such we are invoking the (b)(7)(C) exemption for this type of information that appears in the records we are releasing to you.

Exemption (b)(7)(E) exempts from disclosure information that would disclose techniques and procedures for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.[15]  Where the agency has a clear law enforcement mandate it only need establish a rational nexus between enforcement of a federal law and the information withheld based on a (b)(7) exemption.[16]

Pursuant to Exemption (b)(7)(E), the redacted information in the e-mails concerns the number and type of CBP employees provided to the ICE Operation as well as the length of time CBP could provide them, and the resources relied upon to conduct an analysis of the assets CBP could provide to the operation. Were CBP to release this information, it would enable potential violators to design strategies to circumvent the law enforcement procedures developed and employed by CBP because it would allow potential violators to better prepare themselves to evade and exploit U.S. immigration and other laws.

The Freedom of Information Act, particularly Title 5 U.S.C. § 552 (a)(4)(B), provides you with the opportunity to seek judicial review of this administrative appeal.  You may institute judicial review in the United States District Court in the district in which you reside, have a principal place of business, where the agency records are located, or in the United States District Court for the District of Columbia.

As part of the 2007 FOIA amendments, the Office of Government Information Services (OGIS) was created to offer mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.

---

[15]See *Fisher v. U.S. Dep't of Justice*, 772 F. Supp. 7 (D.D.C. 1991) (explicitly recognizing categorical protection for law enforcement techniques and procedures), aff'd 968 F.2d 92 (1992); and, *Hammes v. U.S. Customs Serv.*, 1994 WL 693717 (S.D.N.Y. 1994) (protecting criteria used to determine which passengers to stop and examine).

[16]See, *Costal Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp.2d 958, 963 (C.D.Cal. 2003) (Customs has a clear law enforcement mandate; Exemption (b)(7)(E) used to withhold techniques or guidelines for law enforcement investigations); *Pons v. U.S. Customs Serv.*, 1998 U.S. Dist. LEXIS 6084 (D.C.C. 1998) (protecting cooperative arrangements between Customs and other law enforcement agencies to keep them effective); and, *Judicial watch, Inc. v. FBI*, 2001 U.S. Dist. LEXIS 25732 (D.D.C. 2001)(protecting the "identities of two types of [FBI] records concerning prison inmates, "the release of which would enable inmates "to alter their activities[,] thus hindering the effectiveness of the technique").

You may contact OGIS in any of the following ways:

Office of Government Information Services
National Archives and Records Administration
Room 2510
8601 Adelphi Road
College Park, MD 20740-6001
E-mail: ogis@nara.gov
Telephone: 301-837-1996
Facsimile: 301-837-0348
Toll-free: 1-877-684-6448

Sincerely,

*Shari Suzuki*

Shari Suzuki, Chief
FOIA Appeals, Policy, and Litigation
Regulations and Rulings
Office of International Trade

**(b)(6)&(b)(7)(C)**

| | |
|---|---|
| **From:** | (b)(6)&(b)(7)(C) |
| **Sent:** | Thursday, March 22, 2018 12:39 PM |
| **To:** | (b)(6)&(b)(7)(C) |
| **Subject:** | FW: FOIA Appeal Request: Operation Matador |
| **Attachments:** | FW: CONOPS OP MATADOR; FW: CBPO Assistance - MS-13; FW: Operation in Long Island |

Good afternoon,

Please see attached emails that were collected. Please contact me if there are any questions.

*Thank You,*

(b)(6)&(b)(7)(C)

*FOIA Program Manager*

(b)(6)&(b)(7)(C)

*Newark, NJ 07102*

(b)(6)&(b)(7)(C) (office)

(b)(6)&(b)(7)(C) (cell)

(b)(6)&(b)(7)(C)

| | |
|---|---|
| **From:** | b(6) & b(7)(C) |
| **Sent:** | Wednesday, March 21, 2018 3:41 PM |
| **To:** | b(6) & b(7)(C) |
| **Cc:** | b(6) & b(7)(C) b(6) & b(7)(C) |
| **Subject:** | RE: FOIA Appeal Request: Operation Matador |

b(6) & b(7)(C)

Here is what we have been able to piece together. The majority of requests have been by phone between HSI and the (b)(7)(E) (b)(7)(E) requests via email are attached.

Let me know if you need anything else.

## b(6) & b(7)(C)

New York Field Office
U.S. Customs and Border Protection
Office: b(6) & b(7)(C)
Mobile: b(6) & b(7)(C)

███████ b(6) & b(7)(C) ██████████

**From:** ██████████ b(6) & b(7)(C) ██████████
**Sent:** Tuesday, March 20, 2018 6:27 PM
**To:** ████████████ b(6) & b(7)(C) ████████████
**Subject:** FW: CONOPS OP MATADOR
**Attachments:** DHS CONOPS v2 Final.docx

Fyi

██████ b(6) & b(7)(C) ██████
New York Field Office
██████ (b)(6)&(b)(7)(C) ██████
U.S. Customs & Border Protection
(C) ██████ b(6) & b(7)(C) ██████

**From:** ████████ b(6) & b(7)(C) ████████
**Sent:** Monday, May 22, 2017 4:24 PM
**To:** ███████████ b(6) & b(7)(C) ███████████
**Cc:** ████████████████ b(6) & b(7)(C) ████████████████
████████████ b(6) & b(7)(C) ████████████
████████████ b(6) & b(7)(C) ████████████

**Subject:** RE: CONOPS OP MATADOR

Sir,

Correct. I have already communicated this to HSI as well today. We are able to assist Operation Matador by providing ██ (b)(7)(E) ██ ██(b)(7)(E)██ resources ██ (b)(7)(E) ██, but need to keep █████████ (b)(7)(E) █████████ for the other operations we have going on and for availability to the ports. I have also advised HSI ███████ (b)(6) &(b)(7)(C) ███████ that I require an ███ (b)(7)(E) ███ ███ (b)(7)(E) ███ so that I can provide this to CBP management.  At all times the team is checking in with me on their ███ (b)(7)(E) ███ ████ (b)(7)(E) ████ as required.

Absolutely on the Hierarchy

██████████ (b) (7)(E) ██████████

Thanks
██ (b)(6) &(b)(7)(C) ██

**From:** ██████ (b)(6) &(b)(7)(C) ██████
**Sent:** Monday, May 22, 2017 3:43 PM
**To:** ████████████ (b)(6) &(b)(7)(C) ████████████
**Cc:** ██████████████ (b)(6) &(b)(7)(C) ██████████████
████████████ (b)(6) &(b)(7)(C) ████████████
███████████ (b)(6) &(b)(7)(C) ███████████
**Subject:** RE: CONOPS OP MATADOR

[(b)(6) &(b)(7)(C)] – as discussed, the [(b) (7)(E)] cannot be [(b) (7)(E)] detailed to OPERATION MATADOR for [(b) (7)(E)] [(b) (7)(E)]. I am not sure if and/or how that level of commitment was conveyed to HSI. Regardless, given the high level of interest in this operation, we should provide as much support as possible, taking into consideration [(b) (7)(E)] and [(b) (7)(E)]. Also, keep in mind [(b) (7)(E)]

Regards,

**(b)(6) &(b)(7)(C)**

U.S. Customs and Border Protection
New York Field Office
O [(b)(6) &(b)(7)(C)]
M [(b)(6) &(b)(7)(C)]

**From:** [(b)(6) &(b)(7)(C)]
**Sent:** Monday, May 22, 2017 1:45 PM
**To:** [(b)(6) &(b)(7)(C)] [(b)(6) &(b)(7)(C)]
**Cc:** NYFO-SRT [(b)(6) &(b)(7)(C)]
**Subject:** FW: CONOPS OP MATADOR

FYI

[(b)(6) &(b)(7)(C)]
New York Field Office
[(b)(6) &(b)(7)(C)]
U.S Customs & Border Protection
(C) [(b)(6) &(b)(7)(C)]

**From:** [(b)(6) &(b)(7)(C)]
**Sent:** Monday, May 22, 2017 12:10:34 PM
**To:** [(b)(6) &(b)(7)(C)]
**Subject:** CONOPS OP MATADOR

**(b)(6) &(b)(7)(C)**

[(b)(6) &(b)(7)(C)]

Desk: [(b)(6) &(b)(7)(C)]
Mobile: [(b)(6) &(b)(7)(C)]

Sent with BlackBerry Work (www.blackberry.com)

**(b)(6) &(b)(7)(C)**

| | |
|---|---|
| **From:** | (b)(6) &(b)(7)(C) |
| **Sent:** | Saturday, May 20, 2017 11:36 PM |
| **To:** | (b)(6) &(b)(7)(C) |
| **Cc:** | (b)(6) &(b)(7)(C) |
| **Subject:** | FW: (b) (7)(E) long Island |

Sir,

These are the (b) (7)(E) on (b) (7)(E) with HSI's task force. I will be (b) (7)(E) (b) (7)(E) for this (b) (7)(E) the Task Force. We will have (b) (7)(E) this operation. If there are any (b) (7)(E) , do you mind having (b) (7)(E) (b) (7)(E) as we will be (b) (7)(E) ?

I will be (b) (7)(E) for HSI on (b) (7)(E) . More info to follow

| | |
|---|---|
| **From:** | (b)(6) &(b)(7)(C) |
| **Sent:** | Saturday, May 20, 2017 4:21 PM |
| **To:** | (b)(6) &(b)(7)(C) |
| **Subject:** | (b) (7)(E) |

(b)(6) &(b)(7)(C) ,

As discussed, please (b) (7)(E) for (b) (7)(E) , such as (b) (7)(E) that we can give to (b) (7)(E) as they are (b) (7)(E) .

They do not have to (b) (7)(E) , although that would be helpful. Just looking at (b) (7)(E) .

Thanks!

(b)(6) &(b)(7)(C)

# (b)(6) &(b)(7)(C)

## (b)(6) &(b)(7)(C)

Desk: (b)(6) &(b)(7)(C)
Mobile: (b)(6) &(b)(7)(C)

Sent with BlackBerry Work (www.blackberry.com)

| | |
|---|---|
| **From:** | (b)(6) &(b)(7)(C) |
| **Sent:** | Friday, May 19, 2017 2:23:30 PM |
| **To:** | (b)(6) &(b)(7)(C) |
| **Subject:** | (b)(6) &(b)(7)(C) |

(b)(6) &(b)(7)(C)

On (b) (7)(E) the New York Field Office (b) (7)(E) will be assisting HSI during Operation (b) (7)(E) on apprehension of (b) (7)(E).

**The role of (b) (7)(E) will be:**
In conjunction with HSI (b) (7)(E)

**The plan for (b) (7)(E) is:**
- The (b) (7)(E) will be assigned (b) (7)(E) HSI teams: (b) (7)(E)
- The (b) (7)(E) teams will (b) (7)(E) in the assigned (b) (7)(E) in order to (b) (7)(E).
- (b) (7)(E)
- (b) (7)(E) the subjects via (b) (7)(E) depending on the situation development.

Should the (b) (7)(E), notification will be made to (b) (7)(E) when it is safe to do so.

(b) (7)(E)

Operation Type: (b) (7)(E)
(b)(6) &(b)(7)(C)

**Team** (b)(6) (b)(7)(C) & (b)(7)(E)
Target: (b)(6) (b)(7)(C) & (b)(7)(E)
Location: (b)(6) (b)(7)(C) & (b)(7)(E)
Offense: (b)(6) (b)(7)(C) & (b)(7)(E)
Criminal History: (b)(6) (b)(7)(C) & (b)(7)(E)
(b)(7)(E) Operators Participating: (b)(6) (b)(7)(C) & (b)(7)(E)
(b)(7)(E) POC: (b)(6) (b)(7)(C) & (b)(7)(E)
HSI Point of Contact: (b)(6) (b)(7)(C) & (b)(7)(E)
Nearest Hospital: (b) (7)(E)
Nearest Trauma Center: (b) (7)(E)

(b)(6) (b)(7)(C) & (b)(7)(E)



(b)(6)  (b)(7)(C) & (b)(7)(E)

**Team** (b)(6)  (b)(7)(C) & (b)(7)(E)
Target: (b)(6)  (b)(7)(C) & (b)(7)(E)
Location: (b)(6)  (b)(7)(C) & (b)(7)(E)
Offense: (b)(6)  (b)(7)(C) & (b)(7)(E)
Criminal History: (b)(6)  (b)(7)(C) & (b)(7)(E)
(b)(6)  (b)(7)(C) & (b)(7)(E)
(b) (7)(E) Operators Participating: (b)(6)  (b)(7)(C) & (b)(7)(E)
(b)(7)(E) POC: (b)(6)  (b)(7)(C) & (b)(7)(E)
HSI Point of Contact: (b)(6)  (b)(7)(C) & (b)(7)(E)
Nearest Hospital: (b) (7)(E)
Nearest Trauma Center: (b) (7)(E)

(b)(6)  (b)(7)(C) & (b)(7)(E)

**(b)(6) (b)(7)(C) & (b)(7)(E)**

**Team** (b)(6) (b)(7)(C) & (b)(7)(E)
Target: (b)(6) (b)(7)(C) & (b)(7)(E)
Location: (b)(6) (b)(7)(C) & (b)(7)(E)
Offense: (b)(6) (b)(7)(C) & (b)(7)(E)
Criminal History: (b)(6) (b)(7)(C) & (b)(7)(E)
(b)(6) (b)(7)(C) & (b)(7)(E)
(b)(7)(E) Operators Participating: (b)(6) (b)(7)(C) & (b)(7)(E)
(b)(7)(E) POC: (b)(6) (b)(7)(C) & (b)(7)(E)
HSI Point of Contact: (b)(6) (b)(7)(C) & (b)(7)(E)
Nearest Hospital: South (b) (7)(E)
Nearest Trauma Center: (b) (7)(E)
(b) (7)(E)

**(b)(6) (b)(7)(C) & (b)(7)(E)**

(b)(6) (b)(7)(C) & (b)(7)(E)

(b)(6)  (b)(7)(C) & (b)(7)(E)

(b)(6)  (b)(7)(C) & (b)(7)(E)

(b)(6)&(b)(7)(C)

**From:** (b)(6)&(b)(7)(C)
**Sent:** Wednesday, March 21, 2018 12:31 PM
**To:** (b)(6)&(b)(7)(C)
**Cc:**
**Subject:** FW: CBPO Assistance - MS-13
**Attachments:** FW: (b)(7)(E)          long Island

(b)(6)&(b)(7)(C) - While OIT continues to figure out my archive issue, here is one email that might be useful, and attached is another one that is more (b)(7)(E) related.

(b)(6)&(b)(7)(C)

U.S. Customs and Border Protection
JFK Airport
Office: (b)(6)&(b)(7)(C)
Cell: (b)(6)&(b)(7)(C)

**From:** b(6) & b(7)(C)
**Sent:** Tuesday, May 09, 2017 9:24 AM
**To:** b(6) & b(7)(C)
**Cc:** b(6) & b(7)(C)
**Subject:** CBPO Assistance

b(6) & b(7)(C)

As discussed, we have (b) (7)(E)

(b) (7)(E)

(b) (7)(E)

Would it be possible to (b) (7)(E)
(b) (7)(E)

Any assistance would be greatly appreciated.

Thank you,

b(6) & b(7)(C)

█████ b(6) & b(7)(C) █████

**From:** ████ b(6) & b(7)(C) ████
**Sent:** Tuesday, March 20, 2018 6:25 PM
**To:** ████ b(6) & b(7)(C) ████
**Subject:** FW: Operation in Long Island

FYI

██ b(6) & b(7)(C) ██
New York Field Office
██ b(6) & b(7)(C) ██
U.S. Customs & Border Protection
██ b(6) & b(7)(C) ██

**From:** ██ b(6) & b(7)(C) ██
**Sent:** Friday, May 05, 2017 12:49 PM
**To:** ████ b(6) & b(7)(C) ████
**Cc:** ████ b(6) & b(7)(C) ████
████ b(6) & b(7)(C) ████
**Subject:** Operation in Long Island

██ – I got your voice mail yesterday. We appreciate the ███ (b) (7)(E) ███ ███ (b) (7)(E) ███
██ b(6) & b(7)(C) ██ Our ███ (b) (7)(E) ███ t for this. I have copied ███ b(6) & b(7)(C) ███
██ b(6) & b(7)(C) ██ and ██ b(6) & b(7)(C) ██ to see if they are ███ (b) (7)(E) ███. Feel free to
reach out to them ███ (b) (7)(E) ███

Thanks,

██ b(6) & b(7)(C) ██
██ (b)(6)&(b)(7)(C) ██
U.S. Customs and Border Protection
███ b(6) & b(7)(C) ███